THE PEOPLE *ex rel.* Edward G. Zilm, County Collector, Appellee, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant.

*Opinion filed December 16, 1914.*

1. TAXES—*express power to levy a tax need not be conferred every time a new duty is imposed upon county.* It is not necessary, every time a new duty involving the expenditure of money is imposed upon a county, expressly to authorize a tax to raise funds to carry out this purpose.

2. SAME—*county board has power to levy a tax for State aid roads.* The Roads and Bridges act of 1913 makes the construction of State aid roads a county purpose, and the county board, under its general powers, may levy a tax for State aid roads.

3. SAME—*sections 15 and 22 of Roads and Bridges act were not intended to authorize levy of tax.* Sections 15 and 22 of the Roads and Bridges act of 1913 were intended to authorize the levy of a tax for State aid roads, and they have nothing to do with the levy of such tax except as the appropriation of funds therein referred to presupposes an antecedent levy.

4. SAME—*extension of tax must be in accordance with the law then existing.* The extension of a tax against property is essential to the completion of the levy, and the extension must be in accordance with the law in force at the time it is made.  .

5. SAME—*under the act of 1913 a hard roads tax must be certified by the highway commissioners to the county clerk.* Under the Roads and Bridges act of 1913 the hard roads tax levied under the act of 1883 must be certified by the highway commissioners to the county clerk, and the county clerk is without authority to extend such tax on the certificate of the town clerk made in accordance with the provisions of the act of 1883 before its repeal by the act of 1913.

APPEAL from the County Court of LaSalle county; the Hon. A. T. LARDIN, Judge, presiding.

BOYS, OSBORN & GRIGGS, (J. A. CONNELL, of counsel,) for appellant.

W. I. HIBBS, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Chicago, Burlington and Quincy Railroad Company filed objections to the application of the county collector of LaSalle county for judgment for taxes against its railroad in that county. The county court overruled the objections and the railroad company appealed from the judgment rendered. Two levies of taxes are involved: a county tax to aid in the construction of State aid roads and a township hard roads tax.

The facts were stipulated. In August, 1913, the State highway commission allotted to the county of LaSalle $35,-000 for State aid roads under the provisions of the act of June 27, 1913, "revising the law in relation to roads and bridges." (Laws of 1913, p. 520.) On September 16 the board of supervisors levied a tax of $35,000 for State aid roads and passed a resolution directing the county clerk to give notice of such levy to the State highway commission. Copies of the levy and resolution were transmitted to the State highway commission. The county tax objected to was extended by virtue of this levy, and the sum of $35,-000 was not appropriated by the board of supervisors out of funds in the county treasury available for the construction of State aid roads nor was the question of issuing county bonds for that sum submitted to the voters of the county.

It is insisted by the appellant that the county board had no authority to levy this tax under the act of 1913; that the county's share of the cost of construction could be

raised only by an appropriation of the required amount out of funds in the county treasury available for that purpose or by an issue of bonds approved by the voters of the county. The act in question creates a State highway department and authorizes the construction and improvement of roads and bridges at the joint expense of the State and county. The county boards are required to designate the highways in their respective counties which shall come within the act, on maps to be forwarded to the highway department, which is required to correct and finally approve such maps and return them to the county clerk. Out of the road appropriations made by the State the highway department is required to allot to each county its share to be used to defray one-half of the cost of improvements under the act. Any county failing to provide, within six months of the date of the allotment, an amount for the construction of State aid roads equal to such allotment forfeits its allotment. Section 15c is as follows: "It shall be considered sufficient acceptance of the allotment to a county of the State appropriation for the construction of State aid roads, if a county board shall give notice to the State highway commission that it has assessed a tax to raise its portion of the cost, or that it has passed an order submitting to a vote of the people the question of raising an additional tax for this purpose, or that it has passed an order submitting to a vote of the people the question of issuing bonds for this purpose. Otherwise, a county's allotment shall be considered forfeited, as provided in section 15b of this act."

The State highway department having corrected and approved the map showing the highways coming within the act and returned the map to the county clerk, it is provided by section 16 that whenever the county board desires to initiate proceedings for the construction of a particular road designated on such map it may pass a resolution stating that the public interest demands the improvement of a highway or section thereof, and requesting that it be con-

structed or improved. Thereupon the State highway commission, if it shall approve of the proposed improvement, may cause plans, specifications and estimates of cost to be made and finally determine whether it will authorize the construction of the proposed improvement as a State aid road. If it decides to authorize the construction its determination is to be transmitted to the county board, and it is then provided by section 22 as follows:

"Sec. 22. At any regular or special meeting of the county board held after notice of the decision of the State highway commission to authorize the construction of the proposed improvement as aforesaid, the county board shall determine whether it will authorize the proceedings necessary to enable the county to contribute the one-half of the cost required for the construction of State aid roads as provided in this act. When a county board has once adopted a final resolution providing for the construction or improvement of a highway or a section thereof in accordance with such plans and specifications, no resolution thereafter adopted by such board shall rescind or annul such prior resolution, either directly or indirectly, excepting under the advice and with the consent of the State highway commission. In case the county board desires that such provision be made for the construction of a State aid road, it may proceed in either of the methods following:

"(1) In case there be sufficient funds in the county treasury available therefor, the county board may appropriate therefrom sufficient to meet one-half the cost of the improvement.

"(2) If the county board so desires and deems it necessary for the purpose of the improvement herein authorized, the said county board, in the manner now provided by law for issuing bonds for county purposes, may submit to the legal voters of their county the question of issuing such county bonds. In such case the votes in favor of the proposition submitted shall be 'For county bonds for State

aid roads,' and those against shall be 'Against county bonds for State aid roads.'"

Counsel for the appellant argue that it is only by section 22 that power is specifically granted to the county board to raise money for State aid roads; that one of the two methods mentioned in that section must be followed, and that therefore the county board has no authority to levy the tax without a vote of the people. County boards are authorized, by paragraph 6 of section 25 of chapter 34 of the Revised Statutes, to levy taxes for county purposes. Under the act of 1913, which authorizes the construction of roads at the joint expense of the State and county, the construction of State aid roads is a county purpose, and no express provision of that act was necessary to enable the county board to levy a tax to raise funds to carry out this purpose. It is not necessary every time a new duty is imposed upon a county involving the expenditure of money, expressly to authorize the levy of a tax for the new purpose. That power exists under the general power conferred upon county boards to levy taxes for county purposes. Neither section 15 nor section 22 was intended to authorize the levy of a tax. Section 15c declares what shall be considered sufficient notice of the county's acceptance of its allotment of the State appropriation. The subsequent sections down to section 22 concern the selection of the particular road to be improved, the consideration of plans, specifications and estimates for the improvement, and the adoption of a scheme therefor. The scheme having been finally adopted, the county board, under section 22, may appropriate the necessary funds if there be sufficient in the treasury available for the purpose, or it may submit the question of issuing bonds to the voters of the county. These provisions have nothing to do with the levy of a tax except as the appropriation from funds available for the purpose presupposes an antecedent levy, and the issuing of bonds will require a subsequent levy. They neither confer

authority on the county board to levy a tax nor limit its
authority to do so.

The authority upon which the county clerk extended the
hard roads tax was a certificate of the clerk of the town
of Troy Grove that the commissioners of highways of that
town had filed in his office a certificate that in accordance
with a vote at the annual town meeting on April 1, 1913,
a special tax of thirty cents on each $100 valuation was
levied for the purpose of constructing and maintaining hard
roads.    The town clerk's certificate was dated April 14,
1913, and was filed with the county clerk the next day.
The county clerk extended the tax in October, 1913.    This
manner of certifying the levy of a hard road tax was in
accordance with the law in force in April, 1913.    The act
revising the law in relation to roads and bridges, which
has been already mentioned, went into effect on July 1,
1913, and by section 110 provided that in case of a favor-
able vote in any township for a special tax for hard roads
the commissioners of highways should levy the tax in ac-
cordance with the vote and certify it to the county clerk,
while section 57 provided that the town clerk should not
certify levies of road and bridge taxes to the county clerk.
The county clerk of LaSalle county, therefore, in October,
1913, had no legal evidence of the levy of a hard road tax
by the commissioners of highways of the town of Troy
Grove.    The certificate of the town clerk had no force in
law and conferred no authority on the county clerk at that
time to extend the tax.    In *People* v. *Toledo, St. Louis
and Western Railroad Co.* 249 Ill. 175, we held that the
extension of the tax against his property is essential to the
completion of the levy of a tax against the property of an
owner, and that the extension must be in accordance with
the law in force at the time it is made.    Citing Cooley on
Taxation, page 21, we said that the repeal of a tax law
puts an end to all right to proceed to a levy of a tax un-
der it, even in a case already commenced, unless the right

is reserved in the repealing statute. The statute in force at the time the extension was made authorized the extension only upon the certificate of the commissioners of highways, and the extension made without their certificate was void.

The judgment will be affirmed as to the State aid road tax and reversed as to the Troy Grove hard road tax.

*Affirmed in part and reversed in part.*